UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CAMAC INTERNATIONAL LIMITED – IN OFFICIAL LIQUIDATION,<br>Debtor in a Foreign Proceeding<br><br>Debtor. | Chapter 15<br><br>Case No. 17-[_____] |

**DECLARATION OF RACHAEL REYNOLDS PURSUANT TO 28 U.S.C. § 1746
IN SUPPORT OF VERIFIED PETITION RECOGNITION OF FOREIGN MAIN PROCEEDING
UNDER 11 U.S.C. §§ 1515 AND 1517 AND RELIEF UNDER 11 U.S.C. §§ 1520 AND 1521**

I, Rachael Reynolds, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am an individual over 21 years of age and am competent to testify and to provide this Declaration in support of the Verified Petition for Recognition of Foreign Proceeding under Chapter 15 (the "**Verified Petition**")[1], which seeks entry of an order (i) recognizing provisional liquidation proceedings commenced in the Cayman Islands with respect to the Debtor under Part V of the Cayman Islands Companies Law (2016 Revision) as the Foreign Main Proceeding, (ii) granting related relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

2. I am a partner and Head of Dispute Resolution for the Caribbean and Asia regions at the law firm of Ogier. I am based in the Cayman Islands office and a member of the firm's Restructuring and Insolvency Group. My practice includes acting for companies and other parties seeking Chapter 15 recognition in the US.

3. I earned an Honours Bachelor's degree in Jurisprudence from Oxford University in the United Kingdom in 1998 and completed the Bar Vocational Course at the Inns of Court School of

---

[1] Except as otherwise indicated, capitalized terms used herein carry the meanings ascribed to them in the Verified Petition.

1

Law, London, and was called to the Bar of England and Wales in 1999. I am also a contributing author to International Asset Tracing in Insolvency, Oxford University Press, 2010.

4. I was admitted to the Bar of the Cayman Islands in 2007 and have practiced in the Cayman Islands continuously since that time. I regularly represent joint provisional liquidators, joint official liquidators and other parties in liquidations in the Cayman Islands.

5. I represent Eleanor Fisher and Tammy Fu (together, the "**Foreign Representatives**" or the "**JOLs**"), in their capacity as Joint Official Liquidators of the Debtor in the proceedings pending in the Grand Court of the Cayman Islands (the "**Cayman Court**"), Financial Services Division Cause No. FSD 72 of 2017 (RMJ) (the "**Cayman Proceeding**").

6. Based on the foregoing, I am familiar with Cayman Islands insolvency law and the Cayman Proceeding.

**Background of Case**

7. The Debtor is a limited liability company incorporated under the laws of the Cayman Islands with a registered office in the Cayman Islands. I understand that, together with its subsidiaries, the Debtor forms a group ("**CAMAC Group**") that in 2015 primarily engaged in oil and gas exploration, development, and crude and condensate marketing activities in Nigeria, Kenya and The Gambia. I understand that the CAMAC Group has more recently focussed on activities in Nigeria as well as investments in South Africa.

8. On April 19, 2017, one of CAMAC's creditors (known as Nigerian Agip Exploration Limited, or NAE) filed a petition in the Cayman Court to wind up CAMAC.

9. On June 7, 2017, the Cayman Court held a hearing on NAE's petition and ordered that the Debtor be wound up (the "**Winding Up Order**") in accordance with the provisions of Part V of the Cayman Islands Companies Law (2016 Revision) (the "**Companies Law**"), and appointed the JOLs as the joint official liquidators of the Debtor (the "**Foreign Main Proceeding**"). A copy of the Winding Up Order is attached as <u>Exhibit A</u> to the Verified Petition.

10. Pursuant to the Winding Up Order, the Foreign Representatives were appointed to serve jointly and severally as joint official liquidators for the Debtor to oversee its liquidation and the winding up of its affairs in the Cayman Islands or elsewhere.

11. The aim of the Foreign Main Proceeding is to ensure the orderly liquidation of the Debtor's assets and the fair treatment of its creditors subject to the conditions and limitations under the applicable law and regulations.

12. Consistent with the aims of the Foreign Main Proceeding, the Foreign Representatives require, on behalf of the Debtor, the protections afforded to foreign debtors under Chapter 15 of the Bankruptcy Code and, more specifically, recognition and relief under Sections 1520 and 1521 of the Bankruptcy Code.

13. Several persons that hold records or have access to records relating to the Debtor and its many subsidiaries are located in Houston, Texas and conduct business out of the offices of CAMAC International Corporation, an affiliated company based in Houston, Texas. CAMAC International Corporation appears to have common board members and management with the Debtor. CAMAC International Corporation has also entered into business transactions with the Debtor and its subsidiaries.

14. To ensure an orderly liquidation, it is essential for the Foreign Representatives to obtain access to all records relating to the Debtor, including those held in Houston, Texas. To date, despite the Foreign Representatives' repeated requests, representatives of the Debtor's subsidiaries and employees of CAMAC International Corporation and its subsidiaries have failed to deliver the information. In some cases these individuals have failed to respond to the Foreign Representatives' inquiries about the Debtor and its subsidiaries. To ensure an orderly liquidation that is fair to all of the Debtor's creditors, the Debtor requires the relief requested in this Petition.

**The Debtor's Business**

15. I understand that the Debtor was incorporated in the Cayman Islands on May 8, 1996 as a limited liability company. Its registered office (following the appointment of the Foreign

Representatives) is located at Suite 4208, 38 Market Street, PO Box 776, Camana Bay, KY1-9006, Cayman Islands.

16. The Debtor is part of a complex corporate structure that includes U.S. and non-U.S. direct and indirect subsidiaries.

17. The Debtor is a holding company, which, I understand, is the ultimate parent of the entities in the CAMAC Group, an international group of companies in the energy sector. The CAMAC Group's organisational structure is depicted in Exhibit B, which is attached to the Verified Petition. I understand that the CAMAC Group's operating companies have historically engaged in exploration and production, engineering, and trading of gas and oil, particularly in African energy markets. Directly and indirectly, the Debtor owns a worldwide network of companies. I understand it had previously indirectly owned a majority of the equity shares in Erin Energy Corporation ("**Erin Energy**"), an oil and gas exploration and production company focused on energy resources in sub-Saharan Africa which is listed on the New York and Johannesburg Stock Exchanges under the ticker symbol ERN. **Events Leading up to the Petition**

18. The Foreign Representatives have been unable to obtain financial records from the Debtor's auditors.

19. The information received by the Foreign Representatives shows that the Debtor's assets have dwindled dramatically: the audited consolidated financial statements of the Debtor and its subsidiaries show an asset holding of US$828,713,770 as of December 31, 2015. At the time of commencement of the Foreign Main Proceeding, the Debtor held only $50,000 in deposit accounts.

**Chapter 15 Filing**

20. The Foreign Representatives, in the short time since their appointment, have become aware of various suspicious transactions concerning the Debtor, its assets, its direct and indirect subsidiaries and affiliated companies, other members of the CAMAC Group, as well as affiliates of the Debtor.

4

21. Several of the people (including former directors of the Debtor) with knowledge of the affairs of the Debtor and its subsidiaries are subject to the U.S. jurisdiction. Such persons have not been forthcoming with key information to date.

22. Therefore, in order to conduct a proper investigation and to fulfil their duties under Cayman Islands law, the Foreign Representatives need Chapter 15 relief to facilitate their investigation of the Debtor and its assets, affairs, rights obligations and liabilities.

**Cayman Islands Legal System**

**The Cayman Judicial System**

23. The legal system of the Cayman Islands is an English-style common-law system based upon the doctrine of precedent.

24. Subject to certain restrictions, an appeal from the Grand Court as of right will lie to the Cayman Court of Appeal with respect to final orders and, with leave of court, with respect to interlocutory orders (with certain exceptions). A further appeal may lie to the Privy Council in respect of a judgment, decree, order or declaration of the Cayman Court of Appeal. The rationes decidendi of decisions of the Privy Council in respect of appeals from the Cayman Islands courts are binding on the Cayman Islands courts in subsequent cases.

25. In the absence of specific Cayman Islands binding authority, the Cayman Islands courts will regard as highly persuasive relevant decisions of the superior courts of record of England and Wales, and of the Privy Council on appeals from other countries, although such decisions are not, strictly speaking, binding on the Cayman Islands courts. Similarly, relevant decisions of the senior courts of record of the other jurisdictions within the British Commonwealth have persuasive value in the Cayman Islands courts where the legal principle under consideration is the same or substantially the same.

**Cayman Islands Companies**

26.   Cayman Islands companies are incorporated pursuant to the Cayman Islands Companies Law (as revised) (the "**Companies Law**"). All companies must maintain registered offices in the Cayman Islands to which all communications and notices may be addressed or served, and where matters such as the administration of annual filings and the payment of annual fees with the Cayman Islands Registrar of Companies (the "**Registrar**") are usually dealt with. Cayman Islands companies are also required to maintain statutory registers of members (i.e. shareholders), mortgages and charges, and directors.

27.   Various types of companies may be incorporated under the Companies Law, but the vast majority of companies are incorporated as exempted companies under Part VII of the Companies Law. The Debtor was registered as a Cayman Islands exempted company on 8 May 1996.

28.   The principal distinction between "exempted" and "ordinary" companies is that, pursuant to section 174 of the Companies Law, an exempted company is prohibited from trading in the Cayman Islands except in furtherance of its business outside the Cayman Islands. Section 174 clarifies that it is not to be construed so as to prevent the exempted company from effecting and concluding contracts in the Cayman Islands and exercising in the Cayman Islands all of its powers necessary for the carrying on of its business outside the Cayman Islands. An exempted company can therefore, for example, maintain premises and employ staff and appoint directors and other agents who are resident in the Cayman Islands, in furtherance of the company's business outside the Cayman Islands.

**Insolvency Proceedings in the Cayman Islands**

29.   The substantive law relating to the winding up of companies incorporated in the Cayman Islands is contained in Part V of the Companies Law.[2] The provisions of Part V apply to

---

[2] Additional laws apply to banks and insurance companies.

companies formed and registered under the Companies Law, including companies that are formed as exempted companies, and, in certain circumstances, foreign companies.

30.     The Companies Law provides for three different modes of winding up Cayman Islands companies, although there is considerable overlap of provisions relating to each system and relating to the powers and duties of the liquidators. They are: (1) winding up by order of the Cayman Court, (2) voluntary winding-up initiated by a resolution of the shareholders, and (3) voluntary winding-up initiated by a resolution of the shareholders, but subject to the supervision of the Cayman Court.

31.     The substantive law contained in Part V of the Companies Law is supplemented by detailed rules governing the practice and procedure for insolvencies of companies that are set out in the Company Winding Up Rules, 2008 (as amended) (the "**CWR**"), the Insolvency Practitioners Regulations 2008 (as amended) and the Grand Court Rules 1995 (as amended), together with a substantial body of local case law.

32.     Pursuant to section 92(d) of the Companies Law, a company may be wound up by the Cayman Court if it is unable to pay its debts. The test that is applied to determine whether a company is unable to pay its debts is based on a cash-flow test of solvency. Pursuant to section 94 of the Companies Law, a creditor (including any contingent or prospective creditor), contributory (which for all practical purposes means a shareholder), or the company, can petition for the compulsory winding-up of a company on the grounds set out in section 92.[3]

33.     In this case, the winding up of the Debtor was initiated through a petition presented by a creditor in accordance with section 92(d) of the Companies Law on the grounds that the Debtor was unable to pay its debt and was liable to be wound up. The liquidation of the Debtor is subject to the supervision of the Cayman Court, and the JOLs have been appointed pursuant to the Winding Up Order.

---

[3] The Cayman Islands Monetary Authority also may do so if the company is carrying on regulated business.

7

34. An official liquidator is an officer of the Cayman Court. Pursuant to section 110(1)(a) of the Companies Law, the function of an official liquidator is to *"(a) collect, realise and distribute the assets of the company to its creditors and, if there is a surplus, to the persons entitled to it; and (b) to report to the company's creditors and contributories upon the affairs of the company and the manner in which it has been wound up."*

35. Except as otherwise ordered by the Cayman Court, Schedule 3 to the Companies Law sets out the powers that an official liquidator may exercise *without* sanction of the Cayman Court (Part 2) and *with* sanction of the Cayman Court (Part 1).

36. Schedule 3 provides that an official liquidator is permitted to exercise the following "Part 2" powers *without* the Cayman Court's sanction:

   a. Take possession of, collect and get in the property of the company, and for that purpose to take all such proceedings as he considers necessary;

   b. Do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal;

   c. Prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with other creditors;

   d. Draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with respect to the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business;

   e. Promote a scheme of arrangement pursuant to section 86 of the Companies Law;

   f. Convene a meeting of creditors and contributories; and

   g. Do all other things incidental to the exercise of his powers.

(See Companies Law, Section 110, Schedule 3, Part 2).

37. Pursuant to Part 1, an official liquidator is authorised and empowered to take the following actions *subject to* the Cayman Court's sanction, and any creditor or party in interest may apply to the Cayman Court with respect to the exercise or proposed exercise of such powers:

   a. Bring or defend any action or other legal proceeding in the name and on behalf of the company;

b. Carry on the business of the company so far as may be necessary for its beneficial winding up;

c. Dispose of any property of the company to a person who is or was related to the company;

d. Pay any class of creditors in full;

e. Make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable;

f. Compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or other person apprehending liability to the company;

g. Deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of such call, debt, liability or claim, and to give a complete discharge in respect of it;

h. Sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels;

i. Raise or borrow money and grant securities therefor over the property of the company;

j. Engage staff (whether or not as employees of the company) to assist him in the performance of his duties; and

k. Engage attorneys and other professionally qualifies persons to assist him in the performance of his duties.

(See Companies Law, Section 110, Schedule 3, Part 1).

38. In the present case, the Cayman Court specifically granted the JOLs the power pursuant to Part 1 of Schedule 3 to the Companies Law to:

a. take any such action as may be necessary or desirable to obtain recognition of the JOLs and/or their appointment in any other relevant jurisdiction and to make applications to the courts of such jurisdictions for that purpose;

b. appoint themselves, or employees of Kalo (Cayman) Ltd, whose remuneration shall be subject to the approval of the Court, as directors of any direct or indirect subsidiary of the Debtor;

9

 c. sell any property of the Debtor and to sell any property of any direct or indirect subsidiary of which they are appointed, by public auction or private contract, provided the property in question does not:

  (i) amount to more than 25% of assets of the Company or subsidiary; or

  (ii) exceed $200,000 in market value (if higher);

 d. do any act or thing considered by them to be necessary or desirable in connection with the liquidation of the Company and the winding up of its affairs in the Cayman Islands or elsewhere; and

 e. appoint such counsel, attorneys, professional advisors, whether in the Cayman Islands or elsewhere, as they may consider necessary to advise and assist them in the performance of their duties in accordance with CWR Order 25 and on such terms as they may think fit and to remunerate themselves out of the assets of the Company.

39. Under the Companies Law, an official liquidator is also empowered to investigate (i) if the company has failed, the causes of the failure, as well as (ii) generally, the promotion, business, dealings and affairs of the company (see Companies Law, section 102).

40. A key principle underlying the Companies Law and the Cayman Proceeding is that the claims of investors and creditors within the same class are treated on a *pari passu* basis (see Companies Law, section 140). I understand that this is also a key principle of the Bankruptcy Code.

41. Notwithstanding that a winding up order has been made, a creditor who has security over the whole or part of the assets of a company is entitled to enforce his security without the leave of the Court and without reference to the liquidator (see section 142 of the Companies Law). Accordingly, under Cayman Islands law, assets over which a valid, fixed security has been granted fall outside of the liquidation estate.

42. Out of the assets that fall into the liquidation estate, the JOLs are bound to pay creditors in the following order of priority after taking into account the expenses of the liquidation:

 i. preferential debts pursuant to section 141 of the Companies Law;

 ii. secured creditors whose security is subject to a floating charge; and

    iii.    all other unsecured creditors on a *pari passu* basis subject to any other legal requirements or agreements otherwise which bind the company, pursuant to section 140 of the Companies Law.

See also CWR, Order 16, entitled "Proof of Debts in Official Liquidation."

43.    There are no provisions in Cayman Islands insolvency law creating any special prejudice or inconvenience for the processing of U.S. claims in a Cayman Islands winding up. Thus, there would be no different treatment of U.S. and Cayman Islands creditors or investors based on their residency or nationality. In addition, pursuant to the CWR, creditors of the insolvent company may assert their claims by submission of a proof of debt by mail and are not required to appear in person before the Cayman Islands Grand Court or the liquidator.

**The Cayman Islands Proceeding is a "foreign proceeding"**

44.    I am advised by U.S. Counsel that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code to mean:

*"... a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation"* 11 U.S.C. § 101(23).

45.    Although the application of section 101(23) of the Bankruptcy Code is ultimately a question of United States law on which I am not qualified to opine, based on my reading of the language of the section, I believe that the Cayman Proceeding would fall within it. The Cayman Proceeding is a judicial proceeding in the Cayman Islands, governed by the Cayman Islands statute applicable to corporate insolvencies. The Debtor's assets and affairs are subject to the control or supervision of the Cayman Court. The purpose of the Cayman Proceeding is the liquidation of the Debtor.

**The JOLs as "foreign representatives"**

46.     I am also advised by U.S. Counsel that "foreign representative" is defined in section 101(24) of the Bankruptcy Code to mean:

*"... a person or body authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."*

47.     Again, the application of section 101(24) is ultimately a question of United States law on which I am not qualified to opine, but in my view the JOLs constitute "foreign representatives" based on a plain reading of the language of the section. They have been appointed by the Cayman Court to administer the liquidation of the Debtor's assets and affairs, and they have been authorised by the orders appointing them to (among other matters) seek recognition in any relevant jurisdiction. Specifically, the JOLs have been authorised by the orders of the Cayman Court to, *inter alia*:

(a)     Take any such action as may be necessary or desirable to obtain recognition of the JOLs and/or their appointment in any relevant jurisdiction and to make applications to the courts of such jurisdictions for that purpose; and

(b)     Do any act or thing considered by them to be necessary or desirable in connection with the liquidation of the Debtor and the winding up of its affairs in the Cayman Islands or elsewhere.

**Additional Facts Regarding to the Debtor's Center of Main Interests**

48.     The Debtor is incorporated in the Cayman Islands under No. 65977.

49.     Although upon its incorporation the Debtor (as an "exempted" company) was restricted from carrying on business within the Cayman Islands, this did not mean that the Debtor lacked a presence in the Cayman Islands.

50.     The Debtor's registered office prior to the commencement of the liquidation was located at Circumference FS (Cayman) Ltd, PO Box 323222, 4th floor, Century Yard, Elgin Avenue KY1-1209, George Town, Grand Cayman, Cayman Islands.

51.     Once the Debtor was placed into liquidation, its registered office was transferred to Kalo (Cayman) Ltd, 38 Market Street, 2nd Floor, Suite 4208, Camana Bay, Grand Cayman, Cayman Islands, for the purpose of the liquidation.

52.     Moreover, Cayman Islands law requires that at least one official liquidator be resident in the Cayman Islands, and here, both JOLs are resident in the Cayman Islands.

53.     The Debtor's liquidation is under the control and supervision of the Cayman Court.

54.     The Debtor has assets in the Cayman Islands.

IN WITNESS WHEREOF, I have executed this Statement under penalty of perjury under the laws of the United States of America this 8th day of October, 2017.

RACHAEL REYNOLDS